Ben (Bong) H. Kim and Kyeh S. Kim v. Commissioner.
Kim v. Commissioner
Docket No. 2078-68.
United States Tax Court
T.C. Memo 1969-126; 1969 Tax Ct. Memo LEXIS 170; 28 T.C.M. (CCH) 671; T.C.M. (RIA) 69126; June 23, 1969, Filed Ben (Bong) H. Kim, pro se, 1109 W. Columbia Ave., Chicago, Ill. Sheldon S. Rosenfeld, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1965 in the amount of $169.06. The issues for decision are whether petitioner Ben (Bong) H. Kim is entitled to deduct $764 or any part thereof as an ordinary and necessary business expense for education and to deduct $200 or any part thereof as an expenditure for the production and collection of income. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who resided at the time the petition in this case was filed in Chicago, Illinois, filed a joint Federal income tax return for the calendar year *171 1965 with the district director of internal revenue, Chicago, Illinois. Ben (Bong) H. Kim, hereinafter referred to as petitioner, was employed from prior to January 1, 1965, until sometime in August 1965 as an insurance adjuster and from about the middle of September 1965 until the end of that year was employed by the United States Gypsum Company as a Workmen's Compensation Supervisor. As an insurance adjuster, petitioner was required to interview claimants and to review insurance claims, accident reports, and related material and write a report of his recommendation as to allowances in whole or in part or disallowances of any claims he had under consideration. As a Workmen's Compensation Supervisor, petitioner reviewed claims made by employees of the United States Gypsum Company to the company by which United States Gypsum Company was insured to see that action on such claims was compatible with the policies of United States Gypsum Company and in accordance with the requirements of the Workmen's Compensation laws. Petitioner was required to hold interviews with claimants, with representatives of the insurance company, and with the attorney for United States Gypsum Company. Petitioner *172 was also required to make written reports and recommendations with respect to the claims he reviewed and to stay alert to legislative and judicial changes that affect workmen's compensation liability. Petitioner was born in Korea. Prior to coming to the United States, he was graduated from the University of Seoul with a degree which is about equivalent to an A.B. or B.S. degree from an American college. After coming to the United States he studied at the University of Missouri where he received his M.A. degree. He wrote a thesis concerning Kashmir while at the University of Missouri. In the spring of 1963 petitioner enrolled in John Marshall Law School in Chicago, Illinois, as a student in the evening division. In June 1964 he was dismissed from John Marshall Law School due to academic deficiency. Sometime late in 1964 petitioner applied for readmission to John Marshall Law School and was advised that in order to be readmitted it would be necessary for him to complete certain courses of study to better prepare him to undertake law school studies and he would also be required to take certain examinations before being readmitted. During the year 1965 petitioner took the following *173 courses of study and examinations: Study Methods and Comprehension Logic - The Art of Thinking (2 semester hours) Basic Accounting (2 semester hours) American Government (2 semester hours) Elements of Accounting 673 Principles of Accounting Advanced Composition, Expression and Argument Law School Admission Test (three times) Comprehensive Examination for Readmission to John Marshall Law School
These courses of study and examinations were those which petitioner was required to take before being considered for readmission to John Marshall Law School. Since petitioner had lived in Korea until he was graduated from college, he had difficulty thinking and writing in the English language. He also had difficulty with accounting concepts as used in American business and understanding the American system of Government. The primary purpose of petitioner's undertaking the courses of study he pursued in 1965 and the examinations he took in that year was to gain readmission to law school. However, the courses of study, as distinguished from the examinations, directly improved his skills in his work as an insurance adjuster and Workmen's Compensation Supervisor. These courses *174 helped him to think, to express himself orally, and to write in the English language and thereby improved his ability to interview claimants, to understand and analyze the reports he reviewed, and to write reports. These courses also helped him to understand the figure amounts of the claims he reviewed and the methods by which laws are enacted and interpreted in this country. During 1965 petitioner paid a total of $597 for fees, tuition, and books in connection with the courses of study he undertook and in addition paid fees totaling $56 for being permitted to take the Law School Admission test three times and to take the Comprehensive Examination at John Marshall Law School. Shortly prior to September 27, 1965, petitioner inquired of the director of the University of Missouri Press at Columbia, Missouri whether he would have any interest in publishing the thesis petitioner had written on Kashmir. The director expressed interest in possibly publishing the thesis. Under date of October 5, 1965, the director of the Missouri University Press wrote a letter to petitioner enclosing a copy of the reader's report on petitioner's thesis and suggesting that since the subject was quite timely, *175 he would review the resulting manuscript if petitioner would undertake immediately the revisions suggested by the reader. Under date of November 22, 1967, the director of the University of Missouri Press wrote petitioner suggesting that since the subject was timely, petitioner direct his attention to the facts in the manuscript and give as much time to it as required to meet the reader's suggestions. Petitioner had no understanding with the director or any other representative of the University of Missouri Press that he would be paid for revising his thesis or that the thesis would be published if revised. During 1965 petitioner had some retyping done on his Kashmir thesis and also had some typing done on the thesis in 1966. Petitioner paid for the typing work done on his thesis as it was done. Petitioner rented a tape recorder to use in connection with rewriting his thesis. He paid a rental charge for use of the tape recorder in 1966. On his Federal income tax return for the calendar year 1965 petitioner deducted the amount of $964 with the explanation, "Educational Expenses - Research works for forthcoming Publication and its preparation on writing." Respondent in his notice *176 of deficiency disallowed petitioner's claimed deduction of $964 with the explanation that petitioner had not established that he was entitled to the deduction under section 162, I.R.C. 1954, or that the amount claimed was expended for the purpose designated. At the trial petitioner contended that $200 of the amount of the deduction claimed was spent on rewriting his thesis and that this amount constituted a nonbusiness expense deduction as an amount spent for the production or collection of income. Ultimate Findings of Fact Petitioner during the calendar year 1965 spent $597 for education to maintain or improve skills required in his employment and is therefore entitled to deduct this amount as an ordinary and necessary business expense. The $56 spent by petitioner for Law School Admission tests and comprehensive tests was not an amount spent to improve petitioner's skills in his employment but was an amount spent solely in obtaining readmission to law school to study for a new profession. This amount is not deductible under section 1.162-5(b)(3), Income Tax Regs., as amended by T.D. 6918, 1967-1 C.B. 36, on which *177 petitioner chose to rely. 674 Petitioner has failed to show any amount of expenditure during the year 1965 for educational purposes other than the amounts of $597 and $56. Petitioner has failed to show either the amount, if any, expended in 1965 in rewriting his thesis on Kashmir or that he reasonably expected to receive income because of any such expenditure he might have made. Opinion As we view this case, it is purely factual. Even though petitioner chose to rely on section 1.162-5, Income Tax Regs., as amended by T.D. 6918, 1967-1 C.B. 36 and made applicable at a taxpayer's election to years prior to 1968 by Rev. Rul. 68-191, 1968-1 C.B. 67, he continues to argue the "principal purpose" rule of the prior regulations. He argues that his studies in 1965 were a part of his law school education and that his law school education was for the principal purpose of improving his skills in his employment. Only as an alternative does he argue that the courses he took in 1965 were such that this education, itself, improved his skills in his employment. Respondent at the trial argued that the courses petitioner took in 1965 *178 were not part of his law school education. Respondent therefore contended that those studies were not undertaken for the "principal purpose" of improving petitioner's skills in his employment but were undertaken for the principal purpose of enabling petitioner to return to law school. Respondent later filed a brief. In this brief he changed his argument to contend that the amounts expended by petitioner in 1965 were part of the expenses of law school education and as such were not deductible under section 1.162-5(b)(3) of his regulations as amended in 1967 because law would be a new profession for petitioner. Lawrence H. Bakken, 51 T.C. 603 (1969). We conclude that petitioner's educational expenses in 1965, except the $56 spent for examinations, were not part of his law school expenses. We further conclude that even though the principal purpose of the expenditure was for education undertaken by petitioner to enable him to reenter law school, the education in and of itself did improve petitioner's skills in his employment in a direct way. The evidence shows that petitioner was handicapped in speaking, thinking, and writing in the English language. The evidence also shows *179 that petitioner had difficulty understanding American finance and governmental operations. The ability to express himself orally and in writing in English and to understand American finance and governmental operations was directly related to petitioner's employment in 1965. This case is not similar to James A. Carroll, 51 T.C. 213 (1968) and cases of similar import which involved taxpayers enrolled in courses necessary to obtain a B.A. degree which courses were not directly or even proximately related to the taxpayer's current employment. Petitioner has failed to show that the $56 spent for examinations in any way improved his skills in his employment during 1965 or that in 1965 he spent any amount in excess of $597 for education which would improve his skills in his employment. Petitioner has failed to show the amount, if any, which he spent in rewriting his thesis on Kashmir during 1965. He has also failed to show that he had any understanding that he would receive any income if his thesis were published. Petitioner specifically stated in his testimony that he had not discussed the matter of payment for his work in revising his thesis with any representative of the *180 University of Missouri Press. He originally claimed educational expenditures for "Research works for forthcoming Publication and its preparation on writing." The indication from the explanation is that petitioner viewed the "hoped for" but not "agreed to" publication of his thesis as furthering his education. This record is totally insufficient to show that petitioner's expenses, if any, in connection with rewriting his thesis were expenditures for the collection or production of income. Decision will be entered under Rule 50.